UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITIBANK, N.A.,<br><br>      Plaintiff,<br><br> - v -<br><br>CARDINAL RIVER ENERGY COMPANY, CARDINAL RIVER ENERGY I, LLC, RIVER ROCK ENERGY COMPANY, and RIVER ROCK FINANCIAL CORP.,<br><br>      Defendants. | Civil Action No. 16-07066 (LTS)<br><br>**FIRST AMENDED COMPLAINT** |

Plaintiff Citibank, N.A. ("Citibank" or "Plaintiff"), by its undersigned counsel, Thompson & Knight LLP, as and for its complaint, alleges as follows:

## INTRODUCTION

1. This action relates to defendants' breach of their fiduciary obligations to Citibank, arising from their collectively being a trusted advisor to and advocate for Citibank, by their allowing, and then seeking to take advantage of, erroneously drafted provisions in documents comprising part of their overall advised strategy for structuring the underlying transaction, resulting in their receiving an inequitable, unconscionable, and impermissible windfall, to Citibank's detriment.

## PARTIES

2. Citibank is a nationally chartered bank, with its principal place of business located at 701 East 60th Street North, Sioux Falls, South Dakota 57104.

3. Cardinal River Energy Company ("Cardinal River") is an Oklahoma corporation with a principal place of business at 211 N. Robinson, Suite 200, Oklahoma City, Oklahoma 73102.

4. River Rock Energy Company ("RRE"), a wholly owned subsidiary of Cardinal River, is an Oklahoma corporation with a principal place of business at 211 N. Robinson, Suite 200, Oklahoma City, Oklahoma 73102.

5. River Rock Financial Corp. ("RRF"), a wholly owned subsidiary of RRE, is an Oklahoma corporation with a principal place of business at 211 N. Robinson, Suite 200, Oklahoma City, Oklahoma 73102.

6. Cardinal River Energy I, LLC, wholly owned by Cardinal River, is an Oklahoma limited liability company ("CRI," together with the other defendants, "Defendants"), with a principal place of business at 211 N. Robinson, Suite 200, Oklahoma City, Oklahoma 73102.

## JURISDICTION AND VENUE

7. This Court has jurisdiction under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000, excluding interest and costs, and there is complete diversity of citizenship between Plaintiff and Defendants.

8. Venue is proper pursuant to 28 U.S.C. § 1391.

## BACKGROUND

I. **The Underlying Indebtedness**

9. Citibank, as administrative agent for BBVA Compass Bank, Cadence Bank, N.A., Texas Capital Bank, N.A., and itself (collectively the "Lenders," each a "Lender"), was a party to

certain loans with a company known as PostRock Energy Services Corporation and certain affiliates thereof (referred to collectively hereafter as the "Borrowers").

10. The Borrowers were indebted to the Lenders in an amount equaling approximately $60 million.

11. For approximately one year during 2015 and 2016, the Borrowers unsuccessfully sought to sell the collateral securing their indebtedness to the Lenders in an attempt to pay off all or a substantial portion of that indebtedness.

II. **Cardinal River**

12. Cardinal River is an energy company that operates through various different names and instrumentalities to provide energy related services in the oil and gas field.

13. Upon information and belief, Cardinal River's management team, including Art Swanson (Cardinal River's chairman of the board), Jay Jimerson (Cardinal River's president, and an attorney), and Brian Cardell (Cardinal River's CFO), control and manage all of the Defendants from the same location, and Cardinal River's employees and agents participate in the performance of the other Defendants' operations and services.

14. Upon information and belief, the other Defendants are mere instrumentalities of Cardinal River.

III. **The Bankruptcy and Cardinal River's Advocacy and Advisement Activities on Behalf of the Lenders**

15. On or about April 1, 2016, the Borrowers filed for bankruptcy in the United States Bankruptcy Court for the Western District of Oklahoma, Case No. 16-11230-SAH (the "Bankruptcy Action").

16. During the course of the Bankruptcy Action, the bankruptcy court appointed a chapter 11 trustee (the "Trustee") for the Borrowers.

17.	The Trustee sold the Borrowers' assets at a bankruptcy auction sale (the "Auction"), at which sale the Lenders were the successful bidders on various oil and gas properties and other assets that the Borrowers owned.

18.	As Cardinal River acknowledges and summarizes on its own website:

> In early 2016, a consortium of five [*sic*] national banks retained an affiliate of Cardinal River Energy to provide independent analysis and advice concerning one of the bank group's oil and gas borrowers that was facing financial distress. The borrower subsequently filed for bankruptcy protection. During the bankruptcy proceeding, Cardinal River continued to provide analyses and advisory services, while also acting as an advocate for the bank group. This eventually led to the formation of River Rock Energy Company, which was formed to assist the banks in making a successful credit bid for substantially all of the borrower's assets. Under a collaborative arrangement with the bank group, River Rock Energy was assigned over 2,500 producing wells, associated leases, and a multi-state gas gathering and processing system. River Rock Operating, LLC operates the wells and the gathering system. Both River Rock Energy and River Rock Operating are thus the culmination of the strategic advice and assistance provided by Cardinal River to the banks.

*See* www.cardinalriver.com.

19.	Specifically with respect to RRE, Cardinal River acknowledges that RRE "was formed in 2016 as part of a collaborative arrangement with a national bank group to assist the banks in making a credit bid for the assets owned by one of their oil and gas borrowers that had filed for bankruptcy protection." *Id.*

20.	Cardinal River further acknowledges that:

> Cardinal River continues to provide management services relating to the foregoing assets, and on a selective basis continues to provide consulting and management services to lenders who are dealing with troubled loans and distressed assets. As a part of such arrangements, Cardinal River acts as an advocate for the banks, and if desirable considers longer term asset ownership and operating services under mutually acceptable agreements with lenders.

*Id*.

21. Cardinal River exercised complete dominion over the other Defendants with respect to the matters alleged herein, and used its dominion to commit the wrongs alleged herein.

22. As noted above, in connection with the Bankruptcy Action Auction and related matters, Cardinal River, operating through its instrumentality CRI, was engaged as a business consultant to advise, guide, and act as an advocate on behalf of the Lenders.

23. Cardinal River/CRI advised the Lenders on, among other things, bidding strategies at the Auction and how to structure the post-sale entities and financing in connection therewith.

24. Cardinal River/CRI advised the Lenders in connection with, among other things, the assignment of the Lenders' successful bid to RRE, another instrumentality that Cardinal River formed, in exchange for the Trustee's conveyance to Lenders of a net profits interest (the "NPI") in the oil and gas leases, wells, and production, pursuant to a Conveyance of Net Profits Overriding Royalty Interest agreement executed in favor of each of the Lenders or its designee.

25. The objective of this arrangement was to provide the Lenders with an upside from owning, directly or indirectly, the NPI, which would give them an opportunity to recover the nearly $60 million that the Borrowers owed to them.

26. As part of this structure, Cardinal River/CRI had the Lenders approve its management of RRE and RRE's subsidiary, River Rock Operating, LLC, though a management agreement pursuant to which Cardinal River/CRI would manage virtually all of Cardinal River/RRE's business in exchange for a monthly management fee of $150,000 plus 12.5% of RRE's net cash flow, as defined under and to be paid in accordance with the terms of the management agreement, which agreement Jay Jimerson signed as either president or manager of all of the parties thereto, further evidencing the unity of interest and control among the Defendants such that they cannot really be said to be separate entities.

27.     Citibank chose not to have the NPI conveyed directly to it, seeking an alternative structure whereby it could essentially control the NPI. Consequently, Cardinal River/CRI assisted in creating a structure whereby Cardinal River/RRE formed another instrumentality, RRF, as a wholly owned subsidiary of Cardinal River/RRE, for the sole purpose of owning Citibank's NPI, with Citibank receiving a note ("Note"), mortgages ("Mortgages"), and an option agreement ("Option Agreement") from Cardinal River/RRE/RRF. The objective of this structure was to enable Citibank to receive the same economic benefit that the other Lenders were going to receive from their direct ownership of their NPI, with Citibank allowed to exercise the option and take ownership of RRF at anytime and in its discretion (the "Note/Option Agreement Objective"). True copies of the Note and Option Agreement are attached collectively hereto as Exhibit "A."

28.     Cardinal River/CRI/RRE participated in the drafting of the Note and Option Agreement designed to accomplish the Note/Option Agreement Objective.

29.     Upon information and belief, the Note was based upon a form note that included a full prepayment option that would permit the prepayment of the Note in full, regardless of the source of funds used for such repayment (the "Non-NPI Full Prepayment Provision"), which is inconsistent with the Note/Option Agreement Objective.

30.     The Option Agreement concomitantly provides that the period during which the option may be effectuated (the "Option Period") expires upon the termination of the Note pursuant to its terms (the "Coterminous Provision"), which is inconsistent with the Note/Option Agreement Objective.

31.     Any full prepayment of the Note from sources other than an NPI Payment, as that term is defined in the Note, would obviate the economic benefits that Citibank was to obtain

through Cardinal River/CRI/RRE's proposed structure by prematurely terminating the Option Period, which is inconsistent with the Note/Option Agreement Objective.

32. Because the source of any NPI Payment was to be from the operation of the assets subject to the NPI, and sufficient net profits were not projected to pay off the Note for many months after the execution of the Note, Citibank would have had ample notice and opportunity to exercise the option prior to there being sufficient funds to pay off the Note, but for the erroneously included Non-NPI Full Prepayment Provision.

33. Additionally, the Coterminous Provision, in and of itself, was erroneous and should not have been included in the Option Agreement because it could result in Citibank losing its rights to the NPI, which was worth millions of dollars, in exchange for an approximately $1 million payment, with Defendants getting an incredible and unjustifiable windfall, which is inconsistent with the Note/Option Agreement Objective.  Rather, the Option Agreement should not have had an expiration date other than upon an authorized disposition of the NPI.

34. Cardinal River/CRI/RRE/RRF, through Jay Jimerson, specifically changed the Note's paragraph that contains the erroneous Non-NPI Full Prepayment Provision and the Option Agreement's paragraph that contains the erroneous Coterminous Provision, evidencing Cardinal River's knowledge of these erroneous provisions, but did not advise Citibank of the existence of these erroneous provisions, much less advise that such provisions were inconsistent with the Note/Option Agreement Objective.

35. Within weeks of the assets being transferred, the Defendants sought to take advantage of the Non-NPI Full Prepayment Provision by seeking to prepay the Note from a source or sources other than from an NPI Payment in order to obviate Citibank's rights under the Option Agreement.

36. Citibank has been damaged in an amount exceeding $15,000,000 by Defendants' actions.

## COUNT I
**(BREACH OF FIDUCIARY DUTY)**

37. All prior allegations are incorporated herein by reference as if fully repeated.

38. As advocates for and advisors to the Lenders, including Citibank, for which services they were paid a fee, Defendants owed Citibank a fiduciary duty of care, loyalty and good faith, which fiduciary duty included an obligation to exercise good business judgment, to act prudently on behalf of Citibank, to discharge their actions in good faith, to act in Citibank's best interest, and to put Citibank's interests before their own.

39. Defendants breached these duties by (i) permitting the Note to include the Non-NPI Full Prepayment Provision, (ii) permitting the Option Agreement to include the Coterminous Provision, and (iii) exercising the Non-NPI Full Prepayment Provision, thereby effectuating the Coterminous Provision, to Citibank's detriment.

40. Defendants breached these duties by putting their own interests first by seeking to take advantage of the erroneously included Non-NPI Full Prepayment Provision and Coterminous Provision in order to obtain an inequitable and unjustifiable windfall, which was inconsistent with the Note/Option Agreement Objective.

41. Defendants breached these duties by putting their own interests first by seeking to preclude Citibank from obtaining the benefits of the transaction that they helped structure, which actions were inconsistent with the Note/Option Agreement Objective.

42. Defendants' conduct was gross, wanton, deliberate, and demonstrated a high degree of moral culpability, and/or Defendants acted with malice, insult, and/or willful or reckless disregard of Citibank's rights.

43. Citibank has been damaged by Defendants' actions.

WHEREFORE, Citibank demands judgment against Defendants awarding Citibank punitive, compensatory and consequential damages, and attorneys' fees and costs, and granting such other relief as is just and proper.

## COUNT II
### (REFORMATION OF CONTRACT - UNILATERAL MISTAKE OF FACT)

44. All prior allegations are incorporated herein by reference as if fully repeated.

45. Citibank accepted the Note and Option Agreement based on the mistake of fact that they were consistent with the Note/Option Agreement Objective.

46. Notwithstanding that Defendants were acting as advocates for and advisors to Citibank, Defendants nevertheless induced Citibank to accept the Note and Option Agreement by failing to disclose that the Note included the Non-NPI Full Prepayment Provision.

47. Notwithstanding that Defendants were acting as advocates for and advisors to Citibank, Defendants nevertheless induced Citibank to accept the Note and Option Agreement by failing to disclose that the Option Agreement included the Coterminous Provision.

48. Citibank's mistake of fact combined with Defendants' concealment, and unconscionable and unethical conduct necessitates the reformation of the Note.

WHEREFORE, Citibank demands judgment against Defendants as follows:

(a) reforming the Note to revise the prepayment provision to preclude a non-NPI full prepayment;

(b) reforming the Option Agreement to remove the Coterminous Provision and any time limitation for the exercise of the option thereunder other than upon an authorized disposition of the NPI;

(c) directing Defendants to accept the return of the improper prepayment;

  (d) adjudicating that RRF remains liable to Citibank under the Note in accordance with its terms; and

  (e) awarding Citibank its attorneys' fees and costs and such other relief as is just and proper.

## COUNT III
### (REFORMATION OF CONTRACT - MUTUAL MISTAKE OF FACT)

49. All prior allegations are incorporated herein by reference as if fully repeated.

50. Alternatively, RRF mistakenly executed and Citibank mistakenly accepted an incorrect version of the Note containing the erroneous Non-NPI Full Prepayment Provision, in lieu of a prohibition of such a payment, justifying the reformation of the Note to remove the provision and to conform to the terms of Cardinal River/CRI's advised structuring of the transaction and achieve the Note/Option Agreement Objective.

51. Alternatively, RRF mistakenly executed and Citibank mistakenly accepted an incorrect version of the Option Agreement containing the erroneous Coterminous Provision, justifying the reformation of the Option Agreement to remove the Coterminous Provision and any time limitation for the exercise of the option thereunder other than upon an authorized disposition of the NPI and to conform to the terms of Cardinal River/CRI's advised structuring of the transaction and achieve the Note/Option Agreement Objective.

  WHEREFORE, Citibank demands judgment against Defendants as follows:

  (a) reforming the Note to revise the prepayment provision to preclude a non-NPI full prepayment;

  (b) reforming the Option Agreement to remove the Coterminous Provision and any time limitation for the exercise of the option thereunder other than upon an authorized disposition of the NPI;

(c) directing Defendants to accept the return of the improper prepayment;

(d) adjudicating that RRF remains liable to Citibank under the Note in accordance with its terms; and

(e) awarding Citibank its attorneys' fees and costs and such other relief as is just and proper.

## COUNT IV
### (INTENTIONAL CONCEALMENT)

52. All prior allegations are incorporated herein by reference as if fully repeated.

53. Defendants had a fiduciary obligation to Citibank as its advocates and advisors.

54. At the time that Defendants delivered the Note and Option Agreement to Citibank, Defendants knew that the Note included the erroneous Non-NPI Full Prepayment Provision, in lieu of a prohibition of such a payment, and the Option Agreement included the Coterminous Provision, yet Defendants failed to disclose these facts to Citibank.

55. Defendants intended for Citibank to rely on their nondisclosure in agreeing to accept the Note and Option Agreement.

56. Citibank reasonably relied on these nondisclosures by Defendants to its detriment.

57. As a direct result of Defendants' intentional conduct as aforesaid, Citibank has been harmed in that it has purportedly lost its right under the Option Agreement to obtain the NPI.

58. Defendants' conduct was gross, wanton, deliberate, and demonstrated a high degree of moral culpability, and/or Defendants acted with malice, insult, and/or willful or reckless disregard of Citibank's rights.

59. As a result of Defendants' conduct, Citibank has sustained damages in an amount to be determined at trial.

WHEREFORE, Citibank demands judgment against Defendants awarding Citibank punitive, compensatory and consequential damages, and attorneys' fees and costs, and granting such other relief as is just and proper.

## COUNT V
### (NEGLIGENT CONCEALMENT/MISREPRESENTATION)

60. All prior allegations are incorporated herein by reference as if fully repeated.

61. Defendants and Citibank were in a special relationship of trust and confidence.

62. Defendants' failure to disclose the existence of the Non-NPI Full Prepayment Provision, in lieu of a prohibition of such a payment, and the Coterminous Provision was made without exercising reasonable care or competence, in the course of their business and in a transaction or transactions in which they had a pecuniary interest, and for the guidance of Citibank in Citibank's business.

63. Citibank reasonably relied on Defendants' nondisclosures to its detriment.

64. As a direct result of Defendants' negligent actions, Citibank has been harmed by purportedly losing its right to exercise the Option and obtain the NPI.

65. As the proximate result of Defendants' conduct, Citibank has sustained damages in an amount to be determined at trial.

WHEREFORE, Citibank demands judgment against Defendants awarding Citibank punitive, compensatory and consequential damages, and attorneys' fees and costs, and granting such other relief as is just and proper.

## COUNT VI
### (UNJUST ENRICHMENT)

66. All prior allegations are incorporated herein by reference as if fully repeated.

67.  Defendants have been unjustly enriched by their aforementioned actions.

WHEREFORE, Citibank demands judgment in its favor and against Defendants awarding damages, together with interest, attorneys' fees and costs, and granting such other and further relief as is just and proper.

## COUNT VII
### (INJUNCTIVE RELIEF AGAINST DEFENDANTS)

68.  All prior allegations are incorporated herein by reference as if fully repeated.

69.  Defendants should be restrained from transferring, encumbering, alienating or in any way adversely affecting the NPI promised to Citibank as part of the structuring of the transaction, as set forth above.

70.  There has been no prior application for the relief sought herein.

WHEREFORE, Citibank demands that judgment be entered enjoining Defendants from transferring, encumbering, alienating or in any way adversely affecting the NPI promised to Citibank, as well as awarding Citibank attorneys' fees, costs of suit, and such other relief as the Court deems just and proper.

Dated  New York, New York            THOMPSON & KNIGHT LLP
       November 21, 2016              *Attorneys for plaintiff Citibank, N.A*


                                     By:   /s/ Stuart J. Glick
                                           STUART J. GLICK
                                           900 Third Avenue, 20th Floor
                                           New York, New York 10022
                                           Telephone  (212) 751-3001
                                           Facsimile  (214) 880-3290
                                           Email stuart.glick@tklaw.com